IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

ORA HARRIS JACKSON,

        Plaintiff,

  Vs.                                No. 09-1008-SAC

MICHAEL J. ASTURE,
Commissioner of Social Security,

        Defendant.


MEMORANDUM AND ORDER

        This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the claimant Ora Harris Jackson's applications for disability insurance benefits under Title II of the Social Security Act ("Act") and for supplemental security income ("SSI") under Title XVI of the Act. With the administrative record (Dk. 3) and the parties' briefs on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 14, and 15), the case is ripe for review and decision.

**PROCEDURAL HISTORY**

        The court summarizes only the proceedings relevant to this appeal. Ms. Ora Harris Jackson appealed the denial of her applications and the adverse decision by the administrative law judge (ALJ). Because

the administrative record was lost, the Appeals Council on February 26, 2006, remanded for a new hearing and decision on her applications. The ALJ conducted a hearing on remand on June 24, 2008, and refused to reopen a prior case or to use an onset date earlier than January 1, 2001. (Rec. 18). The ALJ also found that the claimant Ms. Jackson would not be eligible for SSI after June 30, 2003, because she had remarried. (Rec. 19). After finding that Ms. Jackson's earnings after January 1, 2001, did not reach the level of substantial gainful activity, the ALJ determined that she had a medically determinable impairment of conversion disorder. (Rec. 21). The ALJ, however, found that the claimant's impairment was not severe as it did not significantly limit her ability to perform basic work-related activities for 12 consecutive months. (Rec. 23). The ALJ concluded that Ms. Jackson was not under a disability from January 1, 2001, through June 30, 2003. The Appeals Council denied the claimant's request for review, so the ALJ's decision stands as the Commissioner's final decision. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C.§ 405(g), which provides that the commissioner's finding "as to any fact, if supported

2

by substantial evidence, shall be conclusive." The court's review also entails deciding "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

       The court's duty to assess whether substantial evidence exists:

> "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.'"

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citation omitted).

The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992). Nonetheless, "findings as to credibility should be closely and affirmatively linked to substantial evidence." *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996) (internal quotation marks and citation omitted). The Tenth Circuit has said that "[t]he record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "discuss[ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The ALJ, however, is not required to discuss every piece of evidence. *Id.*

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful activity." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citation omitted). The second step requires the claimant to show she suffers from a "severe impairment," that

is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (124 S. Ct. 376, 379 (2003) (internal quotation marks and regulatory citations omitted). The other steps are not material to this appeal.

At step two, the claimant has the burden to present evidence that she has a medically severe impairment or combination of impairments. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *see also Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("[A] claimed 'physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work.'") (quoting S.Rep. No.1987, 83d Cong., 2d Sess., reprinted in 1954 U.S.Code Cong. & Ad. News 3710, 3730). "If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). "Only 'slight'

impairments imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Lee v. Barnhart*, 117 Fed . Appx. 674, 676, 102 Soc. Sec. Rep. Serv. 1, 2004 WL 2810224 (10th Cir. Dec. 8, 2004) (citing and quoting Social Security Ruling 85-28, 1985 WL 56856 at *3 ( "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a *slight abnormality or a combination of slight abnormalities* which would have *no more than a minimal effect* on an individual's ability to work even if the individual's age, education or work experience were specifically considered.").

Operating within this framework of definitions, "case law prescribes a very limited role for step two analysis." *Lee*, 117 Fed. Appx. at 676-77. Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). Social Security Rule 85-28 directs that:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the

sequential evaluation process.

    . . . A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. . . .

    . . . .

    Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *3-*4.[1] "The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 482 (D. Kan. 2007); *see Newell v. Commissioner of Social Security*, 347 F.3d 541, 547 (3rd Cir. ("Reasonable doubts on severity are to be resolved in favor of the claimant." (citing SSR 85-28)); *Nguyen v. Astrue*, 2010 WL 2628641, at *4

--------

[1]Social Security rulings are binding on an ALJ, as one of the "components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

(D. Kan. Jun. 28, 2010).

With medical evidence, a claimant must make only "the *de minimis* showing of medical severity" for her claim to advance beyond step two of the analysis. *Williams*, 844 F.2d at 751; *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). On the other hand, "the mere presence of a condition is not sufficient to make a step-two showing." *Williamson v. Barnhart*, 350 F.3d at 1100 (citing and quoting *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)). A claimant must provide medical evidence of an impairment and its severity during the alleged period of disability. 20 C.F.R. § 404.1512(c), § 416.912(c). The evidence to establish an impairment must come from acceptable medical sources, including licensed physicians and psychologists. 20 C.F.R. § 404.1513(a), § 416.913(a). The evidence to show the severity of an impairment and its effect on the ability to work may come also from other medical sources, educational personnel, social welfare agency personnel, and other non-medical sources. 20 C.F.R. § 404.1513(d), § 416.913(d).

The regulatory definition of "basic work activities" is:

the abilities and aptitudes necessary to do most jobs. Examples of these include--
(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling;

9

(2)  Capacities for seeing, hearing, and speaking;

(3)  Understanding, carrying out, and remembering simple instructions;

(4)  Use of judgment;

(5)  Responding appropriately to supervision, co-workers and usual work situations; and

(6)  Dealing with changes in a routine work setting.

*Id.* at § 404.1521(b).  "The step-two severity determination is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'"  *Langley*, 373 F.3d at 1123 (citing and quoting *Williams*, 844 F.2d at 750).  "

## SUMMARY OF ARGUMENTS

The plaintiff argues that the ALJ failed to give proper consideration and weight to the diagnosis of the consultative examiner Dr. Ted Mueller.  The plaintiff contends the ALJ erred in finding a lack of credibility in the claimant's medical history when her statements and history are consistent with an accepted diagnosis of somatoform disorder.  Finally, the ALJ failed to develop an adequate record by seeking a supplemental opinion from Dr. Moeller on the onset date of the plaintiff's disabling condition.

## DISCUSSION AND ANALYSIS

The ALJ found a medically determinable impairment of

conversion disorder during the disability period from January 1, 2001, through June 30, 2003.  In making that finding, the ALJ referred to the medical sources of a consultative physical evaluation by Dr. Younger in 1998, a consultative mental status evaluation by Ronald Holzschuh, Ph. D. in 1998, emergency medical treatment records from 2001 through 2006, medical clinic records from 2006 and 2007, and a consultative mental status evaluation by T.A. Moeller, Ph.D. in 2007.  At step two, the ALJ concluded that Ms. Jackson did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities.  The ALJ first found the claimant's descriptions of symptoms and limitations to be "inconsistent and unpersuasive," her alleged impairments to be "unsubstantiated," and her conversion disorder to be evidenced in 1998 by only "mild functional limitations."  (Rec. 24-25).  As for the applicable disability period, the ALJ noted the claimant's medical treatment was limited to emergency room visits for different ailments.  The ALJ observed "there were no more than mild functional mental limitations related to this or any other trauma noted by either mental health sources or physicians until Dr. Moeller's evaluation on April 18, 2007."  (Rec. 25).

Ms. Jackson was referred to the psychologist T.A. Moeller for a

consultative psychological evaluation in April of 2007.  Besides an interview and review of medical records, Dr. Moeller administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2).  (Rec. 745).  As far as Ms. Jackson's mental status, Dr. Moeller reported that she "presented as a pleasant, friendly, and somewhat sleepy-appearing lady of approximately her stated age."  (Rec. 746).  "She sat upright and appeared to be in no significant physical discomfort."  *Id.*  Her gait "was slowed and somewhat weary-appearing," but "[s]he ambulated independently and with little assistance."  *Id.*  She spoke "clearly and appropriately," "responded well to the questions," and was "able to follow directions."  *Id.*  "Her affect was friendly and unusually upbeat and happy for someone who was complaining of the level of distress she was experiencing."  (Rec. 747).  "She denied any depression symptoms, and indeed denied any psychological distress at all, focusing on her physical problems."  *Id.*  Her thought content was "relatively restricted to her physical problems."  *Id.*

Dr. Moeller observed from MMPI-2 test results "a prominent conversion-like profile."  *Id.*  He linked these results backed to the claimant's other consultative examinations:  "Dr. Ronald Holzschuh's June 15, 1998 evaluation of the claimant provided a diagnostic impression that

12

was 'Conversion Disorder with motor symptoms.'  Dr. Stacey Younger's evaluation on May 28, 1998 also suggests, 'This patient's problems are psychiatric, possibly a Conversion Disorder.'"  (Rec. 748).  Dr. Moeller wrote the following as his summary and recommendations:

> From the current evaluation, including the MMPI-2---as well as the records reviewed, I believe the claimant is psychologically disabled from gainful employment.  She presents as someone whose history is replete with a number of vague, functional-like symptoms.  While I am not able to state this is truly a Conversion Disorder (there is an absence of any data suggesting a relatively abrupt onset), I am of the opinion she is experiencing a Somatoform Disorder (NOS).
> I believe the psychological nature of this condition is such that she is disabled from any type of gainful employment.  Any attempt to engage her in active vocational rehabilitation or simple work behaviors will be met with an increase in reported symptoms.
> I believe it is in this lady's best interest to expedite her application if at all possible.

(Rec. 748).  Dr. Moeller's diagnostic impression was somatoform disorder (NOS) and a current Global Assessment of Functioning Scale score of 46.[2]

Dr. Moeller also completed a medical source statement indicating the claimant had moderate restrictions on her ability to interact appropriately with co-workers and supervisors and extreme restrictions on her ability to respond appropriately to typical work pressures and to changes in routine

---

[2]The Diagnostic and Statistical Manual of Mental Disorders p. 34 (4th ed. text rev. 2000)  ("DSM-IV-TR") describes the range of 41 to 50 as involving "serious symptoms . . . or any serious impairment in social, occupational, or school functioning."

work settings.  (Rec. 750).

At the hearing, the ALJ offered to the claimant and her attorney

his impression of Dr. Moeller's opinion:

> And Dr. Moeller did determine that, that in his opinion, Ms. Harris did
> have a somatoform disorder, and he did determine that, at this point,
> she was unable to work.  Okay, now--and I have no problem with Dr.
> Moeller's opinion with regard to, to that issue.  The problem that I
> have in dealing with this case is determining, quite honestly, an
> appropriate onset date, okay?  Because it doesn't appear that there
> is, is a history of treatment for psychological issues, so I really don't
> have, I really don't have a record with regard to psychological
> impairment going back into the past.  So, having said all of that, Ms.
> Peterson, what's, what's your theory in this case?

(Rec. 758).  Counsel for the claimant agreed that there was no history of

psychiatric treatment but that she had been prescribed psychiatric

medications more recently.  Counsel also proposed going through the

record and proving the presence of a somatoform disorder from the

physicians' description of symptoms and their inability to diagnose a cause

for them.  The ALJ replied that with such psychiatric problems it is "a

question of degree" and the condition could "ebb and flow over the years"

or steadily  worsen or improve over time.  (Rec. 761).  The ALJ then

offered:

> Well, I think we're on the same page in terms of trying to, to look at
> how to resolve this case, because, as I said, in terms of, of looking at,
> at the more current information, I--my intension (sic) is to, is to accept

14

Dr. Moeller's evaluation. The problem is determining what, what the appropriate onset date would be in this case, and that's something that, perhaps, we'll be able to resolve by taking another look at the records in this case. It sounds like, as I said, we're kind of on the same page, here, okay?

(Rec. 761-62). The ALJ inquired whether the claimant wanted to present testimony. Counsel and the ALJ agreed on a procedure of first reviewing the medical record and briefing the issue of the onset of the somatoform disorder in light of the Diagnostic and Statistical Manual of Mental Disorders ("DSM') information. The hearing was continued with the ALJ offering the claimant's counsel the opportunity to present testimony later after reviewing the records. The claimant's attorney presented a brief and did not request an opportunity to present additional testimony.

In his decision, the ALJ discussed Dr. Moeller's opinion in these terms after noting the evaluation occurred "almost 4 years after the expiration of the claimant's insured status." (Rec. 26). While Dr. Moeller referred back to the conversion disorder diagnoses of Dr. Younger and Dr. Holzschuh given in 1998, the ALJ dismissed the references for he found "no evidence that the claimant's symptoms were at moderate or extreme levels as of 2003." *Id.* He observed that both opinions from 1998 did not support a finding of disability. The ALJ then questioned Dr. Moeller's

opinion as based on inaccurate information from the plaintiff:

> Furthermore, the claimant gave incorrect information to Dr. Moeller,
> such as reporting that her last employment was at a restaurant in
> October, 2005, while other information shows that she had been
> working as a bagger at McConnell Air Force base grocery store from
> least August, 2006 until approximately 8 days prior to seeing Dr.
> Moeller (exhibits 4E/1; F/262,309). The claimant denied past use of
> illicit or illegal drugs, but described marijuana use to other medical
> sources (exhibits F/262). The claimant's part time employment as a
> bagger while not constituting substantial gainful activity documented
> her ability to get along with others, including the public, as did her
> restaurant work in 2005. She stated that she had worked off and on
> for this restaurant as a hostess and a server. She did not leave to
> due to problems getting along with others. Her job as a bagger
> lasted at least 9 months according to her reports to medical sources
> and she appeared to enjoy it, reporting that it kept her in shape.
> There are inconsistencies between Dr. Moeller opinion and the other
> evidence, based in part on the claimant's withholding of information
> and the claimant's prior employment.

(Rec. 26). Finally, the ALJ found that "Dr. Moeller's opinion only considers

the claimant's current ability to perform work activity, and does not pertain

to the claimant's functioning from January 1, 2001 through June 30, 2003."

*Id.* So, the ALJ did not give Dr. Moeller's opinion "substantial weight in

regard to the claimant's mental functioning during the applicable time

period." *Id.*

The ALJ's evaluation of Dr. Moeller's opinion is flawed in

several respects. First, Dr. Moeller plainly cited the 1998 opinions of Dr.

Younger and Dr. Holzschuh to support his test results of 2007 that

16

established the claimant as suffering from a conversion disorder. The ALJ improperly selected from those earlier reports of Younger and Holzschuh only those portions favorable to his position while ignoring other critical evidence. *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008). Their reports certainly indicate a conversion disorder with more than a minimal impairment.

Stacy Younger, M.D., performed a consultative examination of the claimant in May of 1998. From the medical records, it was observed the claimant gave "a history of transient neurologic symptoms mostly consisting of right sided weakness or numbness. On examination she demonstrates give way weakness as documented by several physicians." (Rec. 221). Dr. Younger observed the same "give way weakness on the right side" in her motor exam. (Rec. 222). She also reported that claimant's gait was "abnormal, patient tends not to put weight on her right leg and drags it a little bit. She does not require an assistive device." (Rec. 222). The claimant had decreased pin prick sensation on right side of her body. Dr. Younger's conclusion was:

> I think the majority of this patient's problems are psychiatric, possibly a conversion disorder. Although her symptoms sound somewhat like MS, her exam is quite exaggerated and all testing has been normal. I would not consider this patient to be disabled. Her walking is

somewhat impaired but I see no problem with sitting, standing, lifting, carrying, handling objects, hearing, or speaking.

(Rec. 222) (underlining added).  In June of 1998, the claimant was referred for a mental status examination to Ronald Holzschuh, Ph.D.  Based on that interview, the diagnostic impression was "Conversion Disorder with Motor Symptoms" with the following summary:

> This 37year old woman who walks extremely slowly, shuffling her feet forward and side to side evidences no outward signs of psychological disturbance except for a paradoxical appearance of friendly serenity. She was very pleasant and intelligent to talk with, telling about her pains but revealing no accompanying verbal or facial expressions. Except for an extremely laborious locomotion there were no other signs of dysfunction.  As the medical records have yet been unable to identify a definite physical disorder her affective demeanor does suggest a possibility of a conversion disorder.

(Rec. 241).  Both physicians observed from the medical records and confirmed from their own examinations that the plaintiff's possible conversion disorder manifested itself in "somewhat impaired" walking, "extremely laborious locomotion," weakness on the right side, and abnormal gait.  These reports not only support Dr. Moeller's diagnosis of a conversion disorder but also evidence symptoms of sufficient severity as to impair the claimant's ability to do basic work activities.  It should be noted that neither of these physicians conducted any objective testing to assess the severity of the claimant's mental disorder.

18

Second, there is nothing in Dr. Moeller's report to indicate that his opinion about the disabling nature of the claimant's mental disorder is based solely or largely on circumstances and developments occurring recently. Indeed, his observation is that her "history is replete with a number of vague, functional-like symptoms" and "there is an absence of a data suggesting a relatively abrupt onset." (Rec. 748). The ALJ presumed Dr. Moeller's opinion could not be considered as addressing anything but the claimant's current ability. The ALJ does not offer that Dr. Moeller was told to report on the claimant's mental disorder for prior periods and chose not to. Instead, Dr. Moeller's opinion was apparently solicited without any time parameters, and the ALJ simply chose to construe the opinion as "not pertain[ing] to the claimant's functioning from January 1, 2001 through June 30, 2003."

Third, when a medical report "does not contain all the necessary information" for the ALJ to determine disability, the regulations direct the ALJ to "seek additional evidence or clarification from" the medical source. *See* 20 C.F.R. § 404.1512(e); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). As the ALJ acknowledged at the hearing, the record was incomplete in showing treatment for this psychological impairment

19

closer to the relevant time period. Instead of acknowledging the inadequate record as the proper reason for recontacting Dr. Moeller for additional information on the onset of the claimant's mental disorder and the nature and severity of it during the relevant time period based on a review of the record, the ALJ chose to interpret Dr. Moeller's report narrowly and then to substitute his own opinion for that of an available medical source. In doing so, the ALJ then chose to rely on other medical sources who treated the physical complaints without any regard for the claimant's diagnosed mental disorder.

Fourth, the court cannot find substantial evidence to support the ALJ's conclusion that Dr. Moeller's opinion is inconsistent with "the other evidence, based in part on the claimant's withholding of information and the claimant's prior employment." (Rec. 26) (underlining added). The ALJ fails to explain how the claimant working a few more months as a grocery bagger "for tips" at the Air Force commissary for three to nine hours a week would have influenced Dr. Moeller's opinion. (Rec. 409). That the claimant only worked part-time from 2005 through 2007 and could not maintain her employment in these part-time positions are factors consistent, not inconsistent, with Dr. Moeller's opinion of the claimant's

"extreme" restrictions with responding to work pressures and to changes in work settings.[3] (Rec. 750). Likewise, the ALJ does not explain how the claimant's admitted illegal use of marijuana in the self-treatment of pain would have influenced Dr. Moeller's opinion.[4]

The court also agrees with the claimant that the record shows she suffered from various physical complaints before, during and after the applicable time period consistent with the diagnosis of conversion disorder. The claimant's brief lays out the diagnostic criteria for somatization disorder and persuasively cites incidents from her lengthy medical record consistent with those criteria. While this approach was discussed at the administrative hearing, the ALJ's review of the medical evidence and evaluation of the plaintiff's credibility was done with little or no attention given to how the diagnosed somatization disorder should affect or inform such a review and evaluation. Records of medical treatment given during and after the relevant time period include complaints and observations of

---

[3]Indeed, the ALJ's opinion fails to address these extreme restrictions in his evaluation of the claimant's impairment. (Rec. 27-28).

[4]The record cited by the ALJ shows the context of the claimant's admission was that she had been suffering from "multiple joint pain that has been ongoing for many years" and that she was seeing this physician for these complaints of pain in August of 2006. (Rec. 677).

the same motor impairments noted in 1998. In June of 2001, during treatment for an automobile accident, weakness in arm and leg were again observed as well as a gait marked by the dragging of a foot. (Rec. 635). In June of 2005, the plaintiff was treated for complaints of throbbing eye pain, dizziness, blurry vision, and loss of power in arm and leg, and the nurse practitioner's observations included weakness in arm and leg and an abnormal and unsteady gait. (Rec. 605-06). Thus, the records show an impairment with walking and right-sided weakness observed in 1998, in 2001, and in 2005.

The ALJ is to find an impairment non-severe only if medical evidence clearly establishes that it has no more than a minimal effect on the person's physical or mental abilities. Social Security Ruling 85-28, 1985 WL 56867 at *3. "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." *Id.* at *4. As discussed above, the record is replete with medical evidence of a conversion disorder dating before the applicable time period and also with medical evidence of symptoms consistent with this disorder before, during and after the same

period.  The physical symptoms apparently attending this disorder, in particular the impaired ability to walk and weaknesses of arm and leg as evidenced in 1998 through 2001 certainly indicate more than a minimal effect on the claimant's ability to perform basic work activities.  The court cannot conclude that the ALJ's finding that the plaintiff has no impairment or combination of impairments that significantly limit her ability to perform basic work activities during the relevant time period is clearly supported by the medical evidence.  Furthermore, the ALJ did not resolve reasonable doubts on the severity of the impairment in favor of the claimant and, instead, presumed the plaintiff's impaired ability to walk would have had no more than a minimal impact on her ability to perform basic work duties.

The court reverses this case and remands it for additional proceedings consistent with the above rulings.  The ALJ shall go forward with the sequential evaluation process from step two, shall recontact Dr. Moeller to request his opinions on the onset and severity of the plaintiff's somatoform disorder during the relevant time period, and shall review the evidence and plaintiff's credibility mindful of any applicable diagnosis of somatoform disorder.

IT IS THEREFORE ORDERED that the judgment of the

Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 22nd day of September, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge